## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

PAUL DAVID HUNTER JR,         )
                                     )

     **Plaintiff,**           )
                                     )    **Case No. 2:25-cv-00079**

v.                     )    **Judge Frensley**
                                     )

FRANK BISIGNANO,         )
COMMISSIONER OF SOCIAL SECURITY   )
ADMINISTRATION,          )
                                     )
     **Defendant.**          )

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion to Reverse and Remand. Docket No. 13. Plaintiff has filed supporting documents, including a Declaration in Support, Plaintiff's Opening Brief, Declaration of Service, and a Proposed Order. Docket No. 13-1 through 13–4. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, Plaintiff's Motion (Docket No. 13) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on January 19, 2023, alleging that he had been disabled since May 24, 2022, due to a broken pelvis, degenerative disc disease in back and neck, asthma, depression, anxiety, COPD, heart issues, missing index

finger on the left hand, vision problems, dyslexia, and high blood pressure.  *See, e.g.,* Docket No. 12, ("TR"), pp. 285, 315. Plaintiff's application was denied both initially (TR 173) and upon reconsideration (TR 183). Plaintiff subsequently requested (TR 201–03) and received (TR 236–58) a hearing.  Plaintiff's hearing was conducted on September 18, 2024, by Administrative Law Judge ("ALJ") Joyce Francis.  TR 36.  Plaintiff and Vocational Expert, Chelsea Brown, appeared and testified. *Id.*

On October 23, 2024, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 17–35.  Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since January 10, 2023, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical degenerative disc disease; status post hip fracture; and remote left hand fracture injury with amputation and reconstructive surgery (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently balance as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles; can frequently stoop, kneel, and crouch; can occasionally crawl; can occasionally handle and finger with the left upper extremity; can frequently reach in front and laterally with the left upper extremity; can occasionally reach overhead with the left upper extremity; and can frequently be exposed to vibration, unprotected heights, or dangerous moving machinery.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 29, 1976 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was

2

filed (20 CFR 416.963).

7.     The claimant has at a least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 10, 2023, the date the application was filed (20 CFR 416.920(g)).

TR 23, 25–26, 30, 31 (citation modified).

On November 2, 2023, Plaintiff timely filed a request for review of the hearing decision. TR 192. On October 23, 2024, the Appeals Council issued a letter declining to review the case (TR 1–7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.    REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.    CONCLUSIONS OF LAW

### A.    Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. The purpose of this review is to determine: (1) whether substantial

evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d

708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.   Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. §423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)   If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*, 923 F.2d at 1181; 20 CFR §404, Subpt. P, App. 2, Rule 200.00(e)(1), (2).  *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985).  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

---

[1] The Listing of Impairments is found at 20 CFR §404, Subpt. P, App. 1.

6

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §423(d)(2)(B).

**C.     Plaintiff's Statement Of Errors**

Plaintiff contends that (1) the Commissioner erred as a matter of law by failing to properly evaluate Plaintiff's subjective symptoms and (2) the Commissioner's decision was not supported by substantial evidence. Docket No. 13-2. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. §405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of §405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1.     Subjective Complaints of Pain**

Plaintiff argues that the Commissioner erred as a matter of law by failing to properly evaluate Plaintiff's subjective symptoms. Docket No. 13-2. Plaintiff contends that the ALJ mischaracterized Plaintiff's medical history when stating that "Plaintiff was treated conservatively and 'was advised against surgical intervention.'" *Id.* at 13 *quoting* TR 27. Plaintiff referenced provider notes from the June 12, 2023, assessment where Plaintiff was told to presently avoid surgery as it may make his neck pain worse. *Id.* at 14. Based on this, Plaintiff asserts that "[s]urgical intervention was not recommended, not for a lack of severity, but rather due to a lack of confidence in a positive outcome. Thus, the ALJ's rejection of Plaintiff's statements as his treatment was conservative and surgical intervention was not recommended is a gross mischaracterization of the record." *Id.* Plaintiff also points to the July 12, 2024, post-MRI session with Dr. Li where "surgical intervention was not recommended based on the impact such a significant procedure would have on Plaintiff's range of motion and the possibility that he would receive no pain relief from such a procedure." *Id.* at 16.

Plaintiff additionally contends that "the ALJ rejected Plaintiff's statements because, 'pain management records identified multiple violations in the context of past substance abuse.'" *Id.* at 18. Plaintiff acknowledges abnormal urine drug screens from 2015 and 2016 but states the "presence of substance abuse six years before the alleged onset date [in 2022] is an improper basis upon which to reject Plaintiff's current statements regarding is symptoms." *Id.* Plaintiff acknowledges that there was an inconsistency in the drug screening during the time period when Plaintiff tested positive for Gabapentin, though Plaintiff stated he had previously received a prescription for Gabapentin from a different provider. *Id.* Plaintiff stated the only violation noted in the record for the time period was a failure to bring medications to an appointment in July 2023.

8

*Id.*

Defendant responds that the ALJ adequately considered the full scope of evidence and reached a decision supported by substantial evidence.  Docket No. 14. Regarding the factors that the ALJ cited in her RFC, Defendant asserts that "[t]he ALJ's resulting RFC was well within her deferential 'zone of choice,' and the Court should reject Plaintiff's challenge to the hearing decision." *Id.* at 3. While acknowledging the ALJ must consider subjective complaints from Plaintiff, Defendant states that the ALJ is only required to consider those symptoms in conjunction with other evidence in the record. *Id.* at 4. In response to Plaintiff's contention regarding the ALJ's mischaracterization of Plaintiff's surgery options, Defendant states that "[t]he ALJ specifically acknowledged the same imaging and clinical signs Plaintiff cites . . . the ALJ acknowledged the rationale for avoiding surgery in exactly the same way that Plaintiff describes in his brief." *Id.* at 5. Regarding Plaintiff's concern with the ALJ's statement on prior drug use, Defendant contends "while substance abuse was not a determinative portion of her analysis, the ALJ did accurately point to October 2023 treatment records where Plaintiff was denied an increase in pain medication due to a positive urine drug screen (Tr. 28, 549–54)." *Id.* at 6 *citing* Docket No. 13–2, p. 17.

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  The Court must first "examine whether there is objective medical evidence of an underlying medical condition."  *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted).  "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or

(2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F. 3d 1027, 1039 (6th Cir. 1994), *construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F. 3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F. 2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F. 2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

10

are not entirely consistent with the medical evidence and other evidence in the record." TR 27.

The ALJ explained her rationale for so finding as follows:

> The claimant's representative argued in a brief that the claimant suffered from a combination of physical health impairments that precluded him from performing substantial gainful employment on a continued and sustained basis. (Exhibit 12E, p. 4). However, a review of the medical evidence confirmed that the claimant was treated conservatively, and he was advised against surgical intervention. He was often observed to be in no acute distress with full strength and intact sensation, and he ambulated without the use of an assistive device. Although the claimant received assistance with some activities of daily living, there is little evidence to support a finding that he was unable to perform these activities. Moreover, pain medication management records identified multiple violations in the context of a past substance abuse. Therefore, consistent with the prior agency medical findings, the claimant can perform a range of light work with postural, manipulative, and environment limitations to account for the claimant's radicular symptoms and range of motion deficits, and no greater than mild limitations in mental functioning in consideration of the claimant's depression.
>
> The claimant has a history of left thigh pain, but an ultrasound returned no evidence of deep vein thrombosis. (Exhibit 2F, p. 5). The claimant also has a history of neck and back pain and was assessed with localized secondary osteoarthritis of the pelvic region and thigh. (Exhibit 1F, pp. 6, 9). Diagnostic imaging of his pelvis, performed prior to the alleged onset date of disability, noted changes in the lateral iliac spine. Contemporaneous imaging of his lumbar spine showed minimal spur formation of the vertebral bodies superiorly at L2 to L5 with a normal sacroiliac and sacra coccyx. (Exhibit 1F, p. 12).
>
> In March 2023, imaging of the claimant's left hip highlighted an unremarkable left femo acetabular joint, and chronic enthesophyte formation versus exostosis irregularities along the anterior left iliac crest, unchanged from previous studies. (Exhibit 2F, p. 6). Imaging of his cervical spine noted multilevel facet arthrosis and degenerative spondylosis throughout the cervical spine most significant at C6 to C7, with disc space height loss and uncovertebral joint spurring causing severe right greater than left foraminal stenosis. (Exhibit 2F, p. 7).
>
> The claimant visited a neurosurgeon in May 2023 for worsening left-sided neck pain that occasionally affected his bilateral arms. (Exhibit 4F, p. 18). An examination was positive for cervical tenderness and decreased range of motion. (Exhibit 4F, p. 19). Subsequent magnetic resonance imaging showed moderate to severe degenerative changes throughout his cervical spine with disc degeneration worse at C6 to C7 and C7 to T1. The claimant had no significant central canal stenosis but had varying degrees of moderate to severe foraminal stenosis. (Exhibit 4F, p. 16). Treatment notes recommended against surgical intervention, as it would likely worsen radicular symptoms and suggested physical therapy, acupuncture,

11

over-the-counter anti-inflammatory medication, anti-neuropathic medications, topical analgesic treatment, herbal supplements, a TENS unit trial, or steroidal injections to help manage the claimant's symptoms. (Exhibit 4F, pp. 12, 16).

The claimant presented for an initial pain medication management evaluation in late June 2023. He described neck pain that worsened with extension and rotation, and improved with medication, good posture, and rest. (Exhibit 6F, p. 32). An examination was positive for tenderness, pain with range of motion, and positive facet loading, but the claimant had full strength and no sensation deficits. (Exhibit 6F, p. 35). Subsequent diagnostic imaging of his right shoulder showed no evidence of acute disease but identified mild dextroscoliosis of the upper thoracic spine and spinal osteoarthritis. (Exhibit 6F, p. 44).

The claimant started physical therapy in July 2023. He reported moderate to severe neck pain and stiffness that affected range of motion. Foraminal compression and vertical spine loading testing was positive. (Exhibit 8F, pp. 3, 4). Treatment records indicated that the claimant's symptoms were consistent with cervical degenerative disc disease. (Exhibit 8F, p. 5). He was discharged after eight sessions due to lack of progress. (Exhibit 8F, p. 23).

The claimant medial branch blocks [*sic*] in August 2023 with eighty to eight-five percent relief in his symptoms, followed by epidural steroidal injections in September 2023 with no relief in his symptoms. (Exhibit 6F, pp. 15, 18, 22, 28). In late October 2023, he continued to describe neck and shoulder pain but was observed to be in no acute distress. (Exhibit 6F, pp. 8, 11). Treatment notes indicated that he requested an increase in pain medication, and was denied, due to risks of addiction and abnormal urinalyses. (Exhibit 7F, pp. 21, 22).

A January 2024 physical examination was unchanged. He had tenderness and decreased range of motion in his cervical spine and right shoulder, with full strength, full sensation, and no acute distress. (Exhibit 7F, p. 11). The claimant underwent a second round of medial branch blocks in March 2024, and reported eighty percent relief in his symptoms for only five hours. (Exhibit 9F, pp. 59, 62). A subsequent radiofrequency ablation was denied by insurance. (Exhibit 9F, p. 81).

The claimant visited a neurosurgeon in June 2024. An examination noted decreased sensation in the C7/C8 distribution, C6 distribution radiculopathy, positive Hoffman's sign, decrease in sensation in the digits of his left hand, and pain in his entire right arm. Imaging showed degenerative spondylosis throughout the cervical spine, most significant at C6 to C7, with disc space height loss and uncovertebral joint spurring causing severe right greater than left foraminal stenosis. (Exhibit 10F, pp. 4, 5). Magnetic resonance imaging confirmed multi-level cervical degenerative disease, facet arthropathy, and uncovertebral hypertrophy, multilevel mid central spinal canal stenosis, and variable degrees of multilevel bilateral neural foraminal stenosis. (Exhibit 10F, pp. 7, 8).

12

> During a follow-up appointment in July 2024, the claimant rated his pain as a ten on a ten-point scale, but treatment noted [*sic*] indicated that there was no canal stenosis or cord impingement on imaging. (Exhibit 10F, p. 9). An examination again showed good strength and intact sensation to light touch. (Exhibit 10F, p. 9). The claimant was advised against surgical intervention as it would result in severely restricted range of motion without guarantee in relief of his symptoms. The claimant agreed that he would not like surgery and opted to continue his pursuit of disability benefits. (Exhibit 10F, p. 10).

TR 27–29.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's subjective claims that were presented to medical professionals, clearly indicating that these factors were considered. TR 27–29. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F. 3d at 531, *citing Bradley,* 862 F. 2d at 1227; *cf King v. Heckler*, 742 F. 2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F. 2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the

13

reasons must be supported by the record. S*ee King*, 742 F. 2d at 975.

Plaintiff may be correct that the ALJ's initial framing of Plaintiff's decision to not pursue surgery as "conservative" does not accurately reflect the medical advice Plaintiff received. However, in the same section, the ALJ did specifically address the rationale for Plaintiff's decision not to pursue surgery and credited medical professionals' concerns about the outcome of the surgery as part of that. TR 27–29. A reading of the entirety of the section makes clear that the ALJ did adequately consider the medical reasons behind Plaintiff's decision to not pursue surgery. *Id.* Regarding the May 2023 visit, the ALJ noted that "[t]reatment notes recommended against surgical intervention, as it would likely worsen radicular symptoms and suggested physical therapy, acupuncture, over-the-counter anti-inflammatory medication, anti-neuropathic medications, topical analgesic treatment, herbal supplements, a TENS unit trial, or steroidal injections to help manage the claimant's symptoms." TR 28 *citing* Exhibit 4F, pp. 12, 16.

Furthermore, the ALJ specifically considered Plaintiff's subjective complaints of pain and weighed them against other factors. For example, the ALJ stated that while Plaintiff "described neck pain that worsened with extension and rotation . . . the claimant had full strength and no sensation deficits." TR 28. As can be seen throughout the ALJ's opinion, the ALJ addressed Plaintiff's complaints that were brought up at medical appointments during the relevant time period and contrasted the complaints with the medical information from those appointments. TR 27–29. By addressing the medical reasons for which Plaintiff elected not to receive surgery in their opinion, Plaintiff's subjective pain complaints, and analyzing available medical records, the ALJ has sufficiently considered the totality of medical evidence and adequately explained her reasoning. Even though there is evidence supporting Plaintiff's contention, the ALJ's opinion was supported by substantial evidence, and therefore, must be upheld.

14

Plaintiff contends that the ALJ's statement of "multiple violations in the context of past substance abuse" is misleading, given that two of the abnormal drug screenings took place years before this application was filed. Docket No. 13-2 at 18. However, the ALJ's statement is not inappropriate given the totality of the record. The record shows that Plaintiff had tested positive for Gabapentin during his drug screening exam in May 2023, as well as received a violation for failing to bring medication in July 2023. TR 487, 490. Regardless of Plaintiff's explanation, both of these events occurred after the alleged onset date of disability, and the ALJ was entitled to factor them into her decision. Even if Plaintiff is correct in considering the violation for failing to bring in medicine a trivial matter, the ALJ is entitled to consider it as evidence, and it supports the statement made by the ALJ. The ALJ's statement was not a mischaracterization of the record nor was it lacking substantial evidence.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that while the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the claimant's statements about the intensity, persistence and limiting effects of their symptoms are not entirely consistent with the medical evidence and other evidence in the record. TR 27–29. The ALJ noted the subjective complaints that Plaintiff provided to medical professionals and weighed them against additional information included in the record. *Id.*

In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 2. Substantial Evidence

Plaintiff contends that the ALJ has "cherry-picked" evidence to support her decision while ignoring contradictory evidence from the record. Docket No. 13-2, p. 18. Plaintiff specifically raises an issue with the ALJ's statement that Plaintiff was often found to be in "'no acute distress with full strength and intact sensation.'" *Id.* at 16 *quoting* TR 27. Plaintiff contends "that [statement] does not paint an accurate portrait of the entirety of the record. In fact, the ALJ's choice to highlight these normal findings ignores other significantly probative evidence. Specifically, tenderness to palpation of the cervical spine, decreased range of motion, and tender paraspinal muscles were consistently noted throughout the record." *Id. quoting* TR 462, 470, 490, 507, 514, 539, 546, 552, 562–63, 638–39, 655, 670, 676, 681. Additionally, Plaintiff notes additional findings of a positive Spurling's test, signs of Hoffman's, and decreased grip strength on the left. *Id.* at 17. Taken as a whole, Plaintiff believes "while some records showed full strength and intact sensation, others revealed just the opposite." *Id.*

Defendant responds by stating that the ALJ did not fail to meet her responsibility to accurately portray the record "by focusing solely on the fact that Plaintiff was in no acute distress and had full strength and intact sensation, as Plaintiff seems to contend." Docket No. 14 at 5, *citing* Docket No. 13–2, p. 15. Defendant further argues that "Plaintiff declines to confront some of the most important evidence cited by the ALJ, which provided substantial evidence to support the RFC formulated by the ALJ." *Id.* at 6. Additionally, "the ALJ also considered other factors, including Plaintiff's testimony regarding his limitations, clinical signs, course of treatment, medication used, and measures Plaintiff used to treat his pain, which were appropriate factors in accordance with 20 C.F.R. § 416.929 and Social Security Ruling 16-3p (Tr. 26–30)." *Id.* at 7.

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

16

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980).

The fourth section of the ALJ's decision in the case at bar specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these were considered. TR 26–30. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ did address medical evidence that supported Plaintiff's argument throughout his decision. The ALJ's summary of Plaintiff's testimony is as follows:

> The claimant alleged a broken pelvis, degenerative disc disease of the back and neck, asthma, depression, anxiety, chronic obstructive pulmonary disease, heart

issues, missing index finger on the left hand, vision problems, dyslexia, and high blood pressure. The claimant testified at the hearing that he had not worked in the last five years and borrowed money from family members. He explained that he could not use his left hand, broke his pelvis, had difficulty using the left side of his body post-motorcycle accident, and ambulated with a limp and the assistance of a cane that was prescribed by a pain medication management provider. The claimant estimated that he could walk for fifteen minutes, sit for thirty minutes, stand for fifteen to twenty minutes, and lift/carry up to two pounds. He required assistance to shower, dress, prepare meals, and complete household chores. The claimant did not care for grandchildren or pets and visited family during the holidays. He underwent amputation of his middle finger and repositioning of his index finger. He could not bend his hand or make a fist, could not straight [*sic*] his left arm, could not bend, and could not squat. The claimant also had chronic obstructive pulmonary disease and asthma for which he used an inhaler, and bulging discs in his neck that resulted in migraine headaches and did not improve with steroidal injections or nerve blocks. (Hearing Testimony).

TR 26–27.

The ALJ continued to summarize Plaintiff's medical history. As discussed in the prior section, the ALJ outlined a comprehensive summary of relevant medical treatment, subjective pain claims, and diagnoses in the fourth section of their opinion. TR 27–29.

As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that she carefully considered the testimony of both Plaintiff and the VE. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. TR 31. Because substantial evidence supports the ALJ's determination that a finding of "not disabled" is appropriate under section 1614(a)(3)(A) of the Social Security Act, the ALJ's decision must stand.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion (Docket No. 13) is **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**